IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case Number:

SREAM, INC. a California Corporation, and
ROOR INTERNATIONAL BV, a Foreign
Corporation

     Plaintiffs,

v.

CZH HOLDINGS, LLC, a Florida Corporation

     Defendant.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

The Plaintiffs, SREAM, INC. and ROOR INTERNATIONAL BV, (collectively referred to as the "Plaintiffs"), by and through their undersigned counsel, hereby file this, their Complaint against the Defendant, CZH HOLDINGS, LLC, a Florida Corporation (hereinafter referred to as "CZH"), and allege, as follows:

### Jurisdictional Allegations

1. This is a civil action against CZH for trademark infringement and counterfeiting, and false designation of origin and unfair competition, under the Lanham Act (15 U.S.C. § 1051 *et. seq.*).

2. This Court has subject matter jurisdiction over the claims in this action that relate to trademark infringement and counterfeiting, and false designation of origin and unfair competition pursuant to the provisions of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

3. This Court has personal jurisdiction over CZH because CZH is incorporated in

and has its principal place of business in Florida, and CZH regularly conducts and solicits business in the State of Florida (including in this Judicial District).

## Venue

4.     Venue is proper in this district under 28 U.S.C. § 1391(b) in that CZH resides in this district, a substantial part of the events or omissions giving rise to the claim occurred in this district, and CZH is subject to personal jurisdiction in this Judicial District with respect to this action, and there is no other district in which the action may otherwise be brought.

## Parties

5.     Sream, Inc. (hereinafter referred to as "Sream") is a corporation incorporated in California and has its principal place of business at 12869 Temescal Canyon Road, Suite A, Corona, California, 92883.  Sream is the exclusive U.S. licensee authorized to use the trademark "RooR" and has been granted authority by the trademark owner to police and enforce the RooR trademark within the United States.

6.     RooR International BV (hereinafter referred to as "RooR Int'l") is a Foreign corporation that is incorporated in the Netherlands and has its principal place of business at Sint Nicolaasstraat 19, 1012 NJ, Amsterdam.  RooR Int'l is the registered owner of the "RooR" trademark.

7.     CZH is a corporation that is incorporated in Florida, and has its principal place of business at 1808 Lake Worth Road, Lake Worth, Florida 33461.  CZH has engaged in the unlawful manufacture, retail sale, and/or wholesale sales of counterfeit RooR branded water pipes and related parts.

## Facts Common to All Counts

A.  <u>The History of The RooR Brand</u>.

8. Martin Birzle is an award-winning designer and manufacturer of smokers' products. Based in Germany, since 1995, Mr. Birzle marketed and sold products using the trademark "RooR." The RooR branded products, such as borosilicate jointed-glass water pipes, parts, and accessories related thereto, are widely recognized internationally and are highly renowned for their ornate and innovative characteristics. Indeed, the RooR brand is one of the leading companies in the industry, and has garnered numerous awards and recognition for its innovative products and designs.

9. For nearly two decades, Mr. Birzle worked to distinguish the RooR brand as the premier manufacturer of glass water pipes by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior smoking experience. RooR branded products embody a painstaking attention to detail, which is evident in many facets of authentic RooR branded products. It is precisely because of the unyielding quest for quality and unsurpassed innovation that RooR branded products have a significant following and appreciation amongst consumers in the United States and internationally.

10. As a result of the continuous and extensive use of the trademark "RooR," Mr. Birzle was granted valid and subsisting federal statutory and common law rights to the RooR trademark. Mr. Birzle then assigned to RooR Int'l all the rights associated with the RooR trademark, retroactively. The retroactive assignment to RooR Int'l was duly recorded with the United States Patent and Trademark Office on January 10, 2018. A copy of the assignment recordation is attached hereto as Exhibit "A."

11. RooR Int'l is the owner of United States trademarks which are registered on the Principal Register and have become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. The following is a list of RooR Int'l's federally registered and

common law trademarks:

    a.    U.S. Trademark Registration Number 3,675,839 for the word mark "RooR" and its logo in association with goods further identified in registration in international class 034.

    b.    U.S. Trademark Registration Number 2,307,176 for the word mark "RooR" and its logo identified below in association with goods further identified in the registration in international classes 025 and 034.

    c.    U.S. Trademark and Registration Number 2,235,638 for the word mark "RooR" and its logo identified below in association with goods further identified in the registration in international class 021.

    d.    Common law and unregistered state law rights in the following variants of the registered "RooR" trademarks:

[RooR® logo]

[RooR TECH® logo]

(hereinafter collectively the "RooR Marks"). A copy of the USPTO registrations is attached hereto as Exhibit "B."

B. <u>The RooR Brand in the United States</u>.

12.    Sream is a California corporation that has manufactured glass products and various smokers' articles, including water pipes, for nearly a decade. Additionally, since 2013, Sream has been the exclusive licensee for the RooR Marks within the United States.

13. Pursuant to a licensing agreement between Sream and Mr. Birzle (hereinafter the "License Agreement"), Sream has used the RooR Marks in commerce throughout the United States continuously since 2013, in connection with the manufacturing of smokers' products. See License Agreement attached hereto as Exhibit "C." RooR Int'l, as the current owner of the RooR Marks, ratified the License Agreement under the same terms and conditions on March 7, 2018. A copy of the ratification agreement is attached here to as Exhibit "D."

14. Under the License Agreement, Sream also advertises, markets, and distributes water pipes, parts, and accessories related thereto and other smokers' articles in association with the RooR Marks. All of these activities are conducted in accordance with the highest standards and policies maintained by RooR Int'l to control the quality of the RooR Brand.

15. Also pursuant to the License Agreement, Sream has been granted all rights to sue to obtain damages and injunctive relief for past and future infringement of the RooR Marks in the United States (hereinafter the "Enforcement Rights"). The License Agreement provides that the Enforcement Rights granted to Sream under the License Agreement are tantamount to those of an assignee, as contemplated by trademark law. The License Agreement also appoints Sream as the trademark owner's legal representative to police and enforce all rights in the RooR Marks within the United States. See License Agreement attached hereto as Exhibit "C."

16. The RooR Marks are distinctive to both the consuming public and the Plaintiffs' trade. Sream's RooR branded products are made from superior materials – glass that is nearly unbreakable – and are hand-blown by individual artists. RooR Int'l has maintained, and demanded of Sream, the same standards that made RooR a recognizable high quality brand. The superiority of RooR branded products is not only readily apparent to consumers, who yearn for the RooR brand's higher quality glass in the marketplace, but to industry professionals as well.

The unique style and functional superiority of the RooR brand has earned it accolades in leading trade magazines and online publications and has made the RooR Marks synonymous with high quality products.

17. Since 2013, Sream has worked in conjunction with Mr. Birzle and now RooR Int'l to build significant goodwill in the RooR brand in the United States. Together, the Plaintiffs have spent substantial time, money, and effort in developing consumer recognition and awareness of the RooR brand via point of purchase materials and displays, through their websites, by attending industry trade shows, and through social media promotion. A wide array of websites, magazines, and specialty shops include advertising of RooR branded products, which are immediately identifiable.

18. Sream sells its products under the RooR Marks to its authorized distributors in the United States, including in Florida. Sream has over a thousand authorized distributors nationwide which include retail stores specializing in smoker's products. As such, RooR branded products reach a vast array of consumers ranging from the most sophisticated tobacco connoisseurs to novice smokers.

19. It is because of the recognized quality and innovation associated with the RooR Marks that consumers are willing to pay higher prices for genuine RooR branded products. For example, a RooR brand 45 cm water pipe retails for $300 or more, while a non-RooR branded product of equivalent size will usually sell for less than $100. As such, sales of products bearing the RooR Marks in the United States have been in excess of five million dollars ($5,000,000) for the last three years.

20. It is exactly because of their higher sales value that RooR branded products are targeted by counterfeiters. These unscrupulous people and entities tarnish the RooR brand by

unlawfully selling water pipes that have identical, or nearly identical, versions of the RooR Marks affixed to products that are made with inferior materials and technology.  Thereby leading to significant illegitimate profits by store owners, such as CZH.  In essence, CZH misleads consumers by selling them low grade products that free ride on the goodwill of the RooR brand, and in turn, CZH reaps substantial ill-gotten profits.  CZH's conduct contributes to the complete flooding of the marketplace with counterfeit products, which results in lost sales and damages to the Plaintiffs and irreparable harm to the RooR brand's image.

21. Unfortunately, the current U.S. marketplace is saturated with counterfeit products – like those CZH has sold.  As such, the Plaintiffs have been forced to scrupulously enforce their rights in order to protect the RooR Marks against infringement.  By exercising its Enforcement Rights, Sream, with the cooperation of RooR Int'l, has proactively and successfully policed the unauthorized use of the RooR Marks and/or counterfeit RooR branded products nationwide.  The Plaintiffs have had to bear great expense to seek out and investigate suspected counterfeiters in their attempt to clean up the marketplace.  In many instances, the Plaintiffs have had to seek redress from the courts in order to effectuate to enforce their rights in the RooR Marks.

### CZH's Counterfeiting and Infringing Activities

22. CZH has, without consent of the Plaintiffs, offered to sell and sold within the United States (including within this judicial district) water pipes that were neither made by the Plaintiffs nor by a manufacturer authorized by the Plaintiffs (hereinafter the "Counterfeit Good(s)").  Nevertheless, CZH sold in commerce Counterfeit Goods using reproductions, counterfeits, copies and/or colorable imitations of one or more of the RooR Marks (hereinafter the "Infringing Mark").

23. In the ongoing investigation into the sales of counterfeit products bearing the

RooR Marks, on March 2, 2018, the Plaintiffs' investigator purchased a glass water pipe with a RooR Mark affixed to it, from CZH, for a cost of $35.00, charged to the account of the Plaintiffs' investigator.

24. Upon receipt, images and/or the physical unit of the product purchased from CZH were inspected by the Plaintiffs' agent to determine its authenticity. The inspection of the purchased item confirmed that the water pipe CZH sold to the Plaintiffs' investigator was a Counterfeit Good with an Infringing Mark affixed to it. A true and correct copy of the Counterfeit Good bearing the Infringing Mark purchased from CZH and its corresponding purchase receipt is attached hereto as Exhibit "E."

25. CZH's use of the RooR Marks includes importing, advertising, displaying, distributing, selling, and/or offering for sale unauthorized copies of RooR branded products. CZH's offering to sell, selling, importing and encouraging others to import Counterfeit Goods bearing the Infringing Mark in this manner was and is likely to cause confusion or to cause mistake and/or deceive consumers who purchase the Counterfeit Goods.

26. CZH's use of the Infringing Mark began long after Mr. Birzle obtained the trademark registrations alleged above, and after Sream's license and subsequent adoption and use of the RooR Marks. Neither the Plaintiffs nor any authorized agents have consented to CZH's use of the RooR Marks, or any use of reproductions, counterfeits, copies and/or colorable imitations thereof.

27. CZH used images and names identical to or confusingly similar to the RooR Marks, to confuse customers and aid in the promotion and sales of Counterfeit Goods under the Infringing Mark. See comparison of Infringing Mark and RooR Mark attached hereto as Exhibit "F."

28. The Infringing Mark affixed to the Counterfeit Goods that CZH has manufactured, distributed, provided, marketed, advertised, promoted, offered for sale, and/or sold, is confusingly identical or similar to the RooR Marks that Sream affixes to its water pipes.

29. The water pipes CZH sells and offers for sale under the Infringing Mark are made of substantially inferior materials and inferior technology as compared to genuine RooR brand products.

30. CZH has manufactured, distributed, provided, marketed, advertised, promoted, offered for sale, and sold its water pipes under the Infringing Mark through its retail convenience store.

31. Upon information and belief, CZH has marketed, advertised, and promoted its Counterfeit Goods under the Infringing Mark through point of purchase displays, and/or its website, and/or via social media promotion.

32. Upon information and belief, CZH offers for sale and sells Counterfeit Goods under the Infringing Mark to a vast array of consumers ranging from the most sophisticated tobacco connoisseurs to novice smokers.

33. CZH's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by CZH, and are likely to deceive, and have deceived, the relevant consuming public into mistakenly believing that the Counterfeit Goods sold by CZH originate from, are associated or affiliated with, or otherwise authorized by Sream and/or RooR Int'l.

34. CZH's acts are willful with the deliberate intent to trade on the goodwill of the RooR Marks, cause confusion and deception in the marketplace, and divert potential sales of

Sream's water pipes to CZH. At a minimum, CZH was intentionally blind to the likelihood of confusion.

35. CZH's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to the Plaintiffs, the RooR Marks, and to its valuable reputation and goodwill with the consuming public for which the Plaintiffs have no adequate remedy at law.

36. As a proximate result of the unfair advantage accruing to CZH's business from deceptively trading on the Plaintiffs' advertising, sales, and consumer recognition, CZH has made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

37. The injuries and damages sustained by the Plaintiffs have been directly and proximately caused by CZH's wrongful advertisement, promotion, distribution, sale and offers for sale of their goods bearing infringements or counterfeits of the RooR Marks.

38. CZH's sale of Counterfeit Goods under the Infringing Mark has resulted in lost business opportunities, customers, contracts, and sales to the Plaintiffs.

39. Through such business activities, CZH purposefully derived direct benefits from its interstate commerce activities by targeting foreseeable purchasers in the State of Florida, and in doing so, have knowingly harmed the Plaintiffs.

40. By its wrongful conduct, CZH has traded upon and diminished the goodwill of the RooR Marks. Furthermore, the sale and distribution of Counterfeit Goods by CZH has infringed upon the above-identified federally registered trademarks.

41. The spurious marks or designations used by CZH in interstate commerce are identical with, or substantially indistinguishable from, the RooR Marks on goods covered by the

RooR Marks. Such use therefore creates a false affiliation between CZH and the Plaintiffs, and the RooR Marks.

42. Due to the actions of CZH, the Plaintiffs have been forced to retain the undersigned counsel, and CZH is responsible for paying its reasonable costs of the action.

43. CZH's acts have damaged, and will continue to damage the Plaintiffs, and the Plaintiffs have no adequate remedy at law.

44. CZH's wrongful acts will continue unless enjoined by the Court. Accordingly, CZH must be restrained and enjoined from any further counterfeiting or infringement of the RooR Marks.

## Count One
## Federal Trademark Counterfeiting and Infringement, 15 U.S.C. § 1114

45. The Plaintiffs repeat and reallege paragraphs 1 through 44 hereof, as if fully set forth herein.

46. RooR Int'l is the owner of the federally registered RooR Marks, as set forth in more detail in the foregoing paragraphs. Mr. Birzle, as prior owner of the RooR Marks, granted to Sream an exclusive license to use the RooR Marks in the United States, including the Enforcement Rights to obtain injunctive and monetary relief for past and future infringement of the RooR Marks. RooR Int'l ratified Sream's License Agreement after acquiring the RooR Marks from Mr. Birzle.

47. The RooR Marks are valid, protectable, and distinctive trademarks that Mr. Birzle and now RooR Int'l continuously used to promote its goods for almost two decades, of which Sream has participated in since at least 2013. The Plaintiffs are informed and believe and thereon allege that a substantial segment of the relevant purchasing public recognizes the RooR Marks as originating from and/or approved by RooR Int'l and/or its exclusive U.S. licensee, Sream.

48. CZH, without authorization from the Plaintiffs, has used spurious designations that are identical with, or substantially indistinguishable from, the RooR Marks on goods covered by the registrations for the RooR Marks. As alleged herein and as per Exhibits "E" and "F," the water pipe sold by CZH was not a genuine RooR product, but was sold under a substantially similar mark.

49. CZH's unauthorized use of the RooR Marks on and in connection with CZH's sale, offers for sale, distribution, promotion and advertisement of water pipes through its retail store constitutes CZH's use of the RooR Marks in commerce.

50. Upon information and belief, CZH has used the RooR Marks, knowing of the Plaintiffs' rights to the Roor Marks in the United States, in connection with CZH's advertisement, promotion, sale, offering for sale and distribution of water pipes.

51. CZH's activities create the false and misleading impression that CZH is sanctioned, assigned, or authorized by Sream and/or RooR Int'l to use the RooR Marks to advertise, manufacture, distribute, offer for sale or sell water pipes bearing the RooR Marks when CZH is not so authorized.

52. Upon information and belief, CZH engaged in the aforementioned activity with the intent to confuse and deceive the public into believing that CZH and the water pipes it sells are in some way originated with, sponsored by, affiliated or associated with the Plaintiffs, when in fact it is not.

53. CZH's use of one or more of the RooR Marks was without the consent of the Plaintiffs, and is likely to cause confusion or mistake in the minds of the public and, in particular, tends to, and does, falsely create the impression that the water pipes advertised, promoted, distributed, offered for sale, or sold by CZH originated with, are authorized, sponsored or

approved by Sream and/or RooR Int'l when, in fact, it is not.

54. Upon information and belief, CZH has committed the foregoing acts of infringement with full knowledge of the Plaintiffs' prior rights in the RooR Marks and with the willful intent to cause confusion and trade on the goodwill of the Plaintiffs and the RooR Marks.

55. CZH's unauthorized use of the RooR Marks as set forth above is likely to: (a) cause confusion, mistake and deception; (b) cause the public to believe that the water pipe sold by CZH is the same as Sream's water pipes or that the water pipes sold by CZH are authorized, sponsored, or approved by Sream and/or RooR Int'l, or that CZH is affiliated, connected, or associated with or in some way related to Sream and/or RooR Int'l; and (c) result in CZH unfairly benefiting from the Plaintiffs' advertising and promotion, and profiting from the reputation of the Plaintiffs and the RooR Marks, all to the substantial and irreparable injury of the public, the Plaintiffs and the RooR Marks and the substantial goodwill represented thereby.

56. CZH's acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

57. CZH's actions constitute the use by CZH of one or more "counterfeit mark" as defined in 15 U.S.C. § 1116(d)(1)(B).

58. The sale of counterfeit products by CZH has resulted in lost profits to the Plaintiffs, caused considerable damage to the goodwill of the Plaintiffs and the RooR Marks, and diminished the brand recognition of the RooR Marks by introducing counterfeit products into the marketplace.

59. By reason of the foregoing, the Plaintiffs are entitled to injunctive relief prohibiting CZH from using the RooR Marks or any marks identical and/or confusingly similar thereto for any purpose, and to recover from CZH all damages, and all gains, profits and

advantages obtained by CZH as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), treble damages pursuant to 15 U.S.C. § 1117(b), and/or the Plaintiffs reserve the right to elect, at any time before final judgment is entered in this case, an award of statutory damages pursuant to 15 U.S.C. § 1117(c).

**Count Two**
**Federal False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a)**

60. The Plaintiffs repeat and reallege paragraphs 1 through 44 hereof, as if fully set forth herein.

61. The Plaintiffs are informed and believe and thereon allege that the RooR Marks have become associated in the minds of consumers with the Plaintiffs and RooR-branded products.

62. CZH's unauthorized use in commerce of the RooR Marks as alleged herein, is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of CZH's goods, and is likely to cause consumers to believe, contrary to fact, that CZH's goods are sold, authorized, endorsed, or sponsored by Sream and/or RooR Int'l, or that CZH is in some way affiliated with or sponsored by Sream and/or RooR Int'l. As described *supra*, and as shown in Exhibits "E" and "F," CZH has a counterfeit water pipe bearing one or more of the RooR Marks or a mark substantially similar, or identical, thereto.

63. CZH's unauthorized use in commerce of the RooR Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

64. Upon information and belief, CZH's conduct as alleged herein is willful and is intended to, and is likely to, cause confusion, mistake, or deception as to the affiliation, connection, or association of CZH, with the Plaintiffs or the RooR Marks.

THE TICKTIN LAW GROUP, PLLC,
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757

65. CZH's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

66. Upon information and belief, as a proximate result of CZH's false designation of origin of the water pipes sold by CZH, the Plaintiffs have been damaged and deprived of substantial sales of its water pipes, and has been deprived of the value of its goodwill in the RooR Marks as commercial assets, in amounts to be established according to proof.

67. CZH's conduct as alleged herein is causing immediate and irreparable harm and injury to the Plaintiffs, and to the goodwill and reputation of the RooR Marks, and will continue to both damage the Plaintiffs and confuse the public unless enjoined by this Court. The Plaintiffs have no adequate remedy at law.

68. The Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, CZH's profits, enhanced damages and profits, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest, and/or the Plaintiffs reserve the right to elect, at any time before final judgment is entered in this case, an award of statutory damages pursuant to 15 U.S.C. § 1117(c).

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, Sream, Inc., a California Corporation, and RooR International BV, a Foreign Corporation, respectfully request the following relief against CZH as follows:

1. With regard to Plaintiffs' claim for trademark infringement and counterfeiting:

    a. CZH's profits and/or statutory damages of up to $2,000,000 under 15 U.S.C. § 1117(c);

    b. CZH's profits, these being trebled;

    c. Costs of suit;

    d. Joint and several liability for officers, and directors, for the knowing participation in the counterfeiting activities of CZH;

  2. With regard to Plaintiffs' claim for false designation and unfair competition:

    a. CZH's profits and/or statutory damages of up to $2,000,000 under 15 U.S.C. § 1117(c);

    b. Costs of suit;

    c. Joint and several liability for officers, and directors, for the knowing participation in the counterfeiting activities of CZH;

  3. Preliminarily and permanently enjoining CZH and its agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concert or participation with it from:

    a. The import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment licensing, development, display, delivery, marketing, advertising or promotion of the counterfeit RooR product identified in the Complaint and any other unauthorized RooR product, counterfeit, copy or colorful imitation thereof;

  4. Pursuant to 15 U.S.C. § 1116(a), directing CZH to file with the Court and serve on the Plaintiffs within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which CZH has complied with the injunction;

5.For an order form the Court requiring that CZH provide complete accountings and for equitable relief, including that CZH disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if CZH had complied with their legal obligations, or as equity requires;

6.For an order from the Court that an asset freeze or constructive trust be imposed on all monies and profits in CZH's possession, which rightfully belong to the Plaintiffs;

7.Pursuant to 15 U.S.C. § 1118 requiring that CZH and all others acting under CZH's authority, at its cost, be required to deliver up to Sream for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the RooR Marks;

8.For treble damages suffered by the Plaintiffs as a result of the willful and intentional infringements engaged in by CZH, under 15 U.S.C. § 1117(b);

9.For all costs of suit;

10.For such other and further relief as the Court may deem just and equitable

Date: June 29, 2018Respectfully Submitted
/s/ Jamie Alan Sasson
Jamie Alan Sasson
Fla Bar #10802
The Ticktin Law Group, PLLC.
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Serv513@LegalBrains.com
Serv555@LegalBrains.com
Telephone: 954-570-6757
Facsimile: 954-418-7120
*Attorneys for the Plaintiff*

THE TICKTIN GROUP, PLLC,
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (954) 570-6757